"O"

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY M. KAUSCH and MEGAN KAUSCH, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT WILMORE, WILMORE & ASSOCIATES, LEE WIND, WINDSEARCH, INC., JOANNA KARALEKAS, and DOES 2-10, <br><br> Defendants. | CASE NO. SACV 07-817 AG (MLGx) <br><br> ORDER DENYING WINDSEARCH MOTION FOR SUMMARY JUDGMENT |

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants Lee Wind ("Wind") and Windsearch, Inc. ("Windsearch") (collectively the "Windsearch Defendants"). After considering all papers and arguments submitted, the Court DENIES the Motion.

**BACKGROUND**

In this case, Plaintiffs Corey and Megan Kausch ("Plaintiffs"), a married couple, assert that a host of defendants have violated their rights under the Fair Credit Reporting Act

1  ("FCRA") and their rights to privacy by impermissibly accessing and distributing their credit
2  report. The parties appear to agree on the essential facts of the case.
3        In 2006, Corey Kausch was involved in a personal injury lawsuit. One of his opponents
4  in that lawsuit, conducting litigation-related discovery, requested Corey Kausch's credit report.
5  Defendant Scott Wilmore then instructed Defendant Joanna Karalekas ("Karalekas") to obtain
6  Corey Kausch's credit report. (Opp'n 2:13-14.) Karalekas then instructed Laura Williams
7  ("Williams"), an assistant to Henry Foresta ("Foresta"), a private detective and President of
8  Master PI Detectives, Inc. ("Master PI"), to obtain Corey Kausch's credit report. (Opp'n 2:18-
9  19.) Foresta and Karalekas had a pre-existing relationship, and Williams did not ask Karalekas
10 why the credit report was being obtained or for whom Karalekas was requesting it. (Opp'n 2:19-
11 22.) Foresta himself was unaware of the request. (Opp'n 2:23-25.) Williams then contacted the
12 Windsearch Defendants and requested Corey Kausch's credit report. (Opp'n 2:27-28.) The
13 Windsearch Defendants apparently had a pre-existing relationship with Foresta and did not ask
14 Williams why the credit report was being obtained or for whom Williams was requesting it.
15 (Opp'n 3:1-4.) That same month, the Windsearch Defendants obtained Corey Kausch's credit
16 report and provided it to Master PI. (Wind Decl. ¶ 14.)
17       Based on these facts and others, Plaintiffs state two claims against the Windsearch
18 Defendants: one claim for negligent violation of the FCRA and one claim for violation of their
19 rights to privacy. The Windsearch Defendants now move for summary judgment of both claims.
20       The Windsearch Defendants' papers also make limited argument that Defendant Wind
21 individually is entitled to summary judgment, but the facts and arguments presented are
22 insufficient to support this position.
23
24 **LEGAL STANDARD**
25
26       Summary judgment is appropriate only where the record, read in the light most favorable
27 to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .
28 the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *See id.* at 322-23. If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

The standard that applies to a motion for summary adjudication is the same standard that applies to a motion for summary judgment. *See* Fed. R. Civ. P. 56(a), 56(c), 56(d).

**ANALYSIS**

**1.      CLAIM FOR NEGLIGENT VIOLATION OF THE FCRA**

Plaintiffs' first claim against the Windsearch Defendants is for negligent violation of the FCRA, in violation of 15 U.S.C. § 1681(o). Section 1681(o) of the FCRA imposes liability on "any person" for failure "to comply with any requirement" of the FCRA "with respect to any consumer." *See* 15 U.S.C. § 1681(o); *Hansen v. Morgan*, 582 F.2d 1214 (9th Cir. 1978). Plaintiffs contend that the Windsearch Defendants negligently failed to comply with their duties under Section 1681e(e) of the FCRA. Section 1681e(e) requires parties who resell consumer reports to "establish and comply with reasonable procedures designed to ensure that the report

1  (or information) is resold by the person only for a purpose for which the report may be furnished
2  under [Section 1681b]." 15 U.S.C. § 1681e(e)(2)(A).  Those reasonable procedures must
3  include requiring each person to whom the report is resold, or who provides the report to another
4  person: (i) identifies each end user of the resold report; (ii) certify each purpose for which the
5  report will be used; and (iii) certify that the report will be used for no other purpose.  *Id.*  A
6  reseller must also make "reasonable efforts" to verify those identifications and certifications.  15
7  U.S.C. § 1681(e)(2)(B).

8  Here, Plaintiffs assert that the Windsearch Defendants "made absolutely no effort to
9  determine the ultimate end use, end users, and end destination of Plaintiff's Credit Report."
10 (Opp'n 8:3-4.)  The Windsearch Defendants assert that Windsearch "employed reasonable and
11 detailed procedures to pre-qualify, prescreen and pre-vet potential customers and searches."
12 (Mot. 9:9-10.)  Defendant Wind asserts that Windsearch is "especially sensitive to the
13 requirements of the FCRA."  (Wind Decl. ¶ 9.)  When a third-party potential client contacts
14 Windsearch to request information searches, Windsearch requires the client to complete a Client
15 Data Form and a standardized Request Form.  (Wind Decl. ¶ 9.)  The Request Form must detail
16 the purpose of the credit report requested.  (Wind Decl. Ex. B.)  The Client Data Form explains
17 to clients that personal financial information is protected material and "directly explains the
18 circumstances under which asset searches are legal."  (Wind Decl. ¶ 10.)  The form also points
19 out that "all requests must be accompanied by a signed statement of permissible use as outlined
20 in the Federal Fair Credit Reporting Act."  (*See* Wind Decl. Ex. C.)  In 2006, Windsearch also
21 used a standardized Search Request Form.  A company, person, or entity requesting a search was
22 required to fill out that form and specify the purpose of the search.  (Wind Decl. ¶ 12.)  The form
23 listed several permissible purposes for searches under the FCRA, and the company, person, or
24 entity requesting the search was required to check off a box next to the applicable permissible
25 purpose.  (Wind Decl. ¶ 14.)  The requester was also required to sign the request form verifying
26 its contents and the stated purpose of the search.  (Wind Decl. ¶ 12.)

27 Windsearch received the request for Corey Kausch's credit report in February 2006.
28 (Wind Decl. ¶ 14.)  That request came from Master PI, an existing client of Windsearch, and was

4

signed by Laura Williams. (Wind Decl. ¶ 14.) When Master PI requested Corey Kausch's credit report in 2006, Master PI had already been a client of Windsearch for three years. (Wind Decl. ¶ 14.) Thus, Defendant Wind asserts that Windsearch "had already 'vetted' this company and confirmed its identity years before the request at issue was made in February of 2006." (Wind Decl. ¶ 15.) The forms accompanying the request for Corey Kausch's credit report had a permissible purpose "checked off": "[l]egitimate business need for the information in connection with a business transaction that is initiated by the consumer or to review an account to determine whether the consumer continues to meet the terms of the account." (Wind Decl. ¶ 15; Ex. E.) Windsearch accepted the request and provided Master PI with Corey Kausch's credit report that same month. (Wind Decl. ¶ 14.)

The Court finds that a triable issue of material fact remains as to whether the Windsearch Defendants complied with the FCRA. Under the FCRA, resellers of credit information are required to ensure that the credit information is resold only for a permissible purpose. Windsearch was obligated, under the statute, to determine the end user of Corey Kausch's credit report and the purpose of the request for Corey Kausch's credit report. Windsearch was further obligated to make "reasonable efforts" to verify Master PI's representations regarding the end user of the credit report and the purpose for the request. The Windsearch Defendants have not established, as a matter of law, that their procedures complied with the FCRA. It does not appear that the Windsearch Defendants made any effort to determine who the end user of Corey Kausch's credit report would be. Further, it does not appear that the Windsearch Defendants made any effort to verify Master PI's representation that the credit report was being requested for a permissible purpose. While the Windsearch Defendants argue that Master PI was previously "vetted," they provide little evidence regarding the "vetting" process. Windsearch did provide its clients, including Master PI, with information regarding permissible requests under the FCRA, but it does not appear that the Windsearch ever attempted to ensure that anyone at Master PI had read the information and understood it. It is not clear what efforts Windsearch made to ensure that Master PI or Foresta "knew the permissible scope of the FCRA and could be trusted." (Opp'n 10:11.)

The Windsearch Defendants point to Section 1681e(a) of the FCRA, arguing that under that section, "the heightened duty of investigation that Plaintiffs seeks [*sic*] to impose is only applicable, if it all, to 'new' users of credit reporting services and <u>not</u> to established users." (Reply 6:20-22.)  Section 1681e(a) provides, in part, that "[e]very consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report."  15 U.S.C. § 1681e(a).  The Windsearch Defendants argue that the state "plainly sets out two standards, one for 'new prospective users' and another for established users of consumer credit report services." (Reply 7:11-13.)  But by its clear terms, Section 1681e(a) applies to consumer reporting agencies and not resellers of consumer information like Windsearch.  The Windsearch Defendants provide no authority stating that the standards of 1681e(a) should be applied to resellers of credit information.  This argument fails.

The Windsearch Defendants have not established, as a matter of law, that their procedures do not violate the FCRA.  Their Motion for Summary Judgment is DENIED as to Plaintiffs' claim for negligent violations of the FCRA.

**2.      CLAIM FOR INVASION OF PRIVACY**

Plaintiffs' second claim against the Windsearch Defendants is for invasion of privacy. California courts have recognized four general categories of the modern tort of invasion of privacy: (1) intrusion of solitude; (2) public disclosure of private facts; (3) false light; and (4) appropriation of likeness.  *See, e.g.*, *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200, 214 (1998); *Virgil v. Time, Inc.*, 527 F.2d 1122, 1125 (9th Cir. 1975).  Plaintiffs contend that the Windsearch Defendants violated their right to privacy by "obtain[ing] private and sensitive personal information about Plaintiffs in violation of Plaintiffs' right of privacy and for an improper purpose."  (FAC ¶ 37.)  That information, Plaintiffs allege, includes "the information found in Plaintiff Corey Kausch's credit report."  (FAC ¶ 37.)

The Windsearch Defendants argue that they are entitled to summary judgment because

their conduct in obtaining Corey Kausch's credit report was permissible under the FCRA. This Court has already found that a triable issue of fact remains as to whether the Windsearch Defendants' conduct violated the FCRA, and the Windsearch Defendants are not entitled to summary judgment of Plaintiffs' invasion of privacy claim. The Motion for Summary Judgment is DENIED as to Plaintiffs' claim for invasion of privacy.

**DISPOSITION**

The Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

DATED: February 24, 2009

_____
Andrew J. Guilford
United States District Judge